United States Courts
Southern District of Texas
FILED
*October 14, 2026*
Nathan Ochsner, Clerk of Court

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | |
| | § | **Criminal No. 4:26-cr-676** |
| **RICHARD B. AJAYI,** | § | |
| | § | **SEALED** |
| **Defendant.** | § | |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

***Overview of Scheme***

1. Defendant **Richard B. Ajayi ("AJAYI")** was a resident of Fort Bend County, Texas.

2. **AJAYI** would work with individuals overseas to move fraudulent proceeds into and out of specified accounts to avoid detection.

3. These accounts were used to receive deposits from the proceeds of fraudulent schemes. Among other things, these included the proceeds of romance schemes, hacking schemes (referred to as "business email compromises"), account takeover schemes, unauthorized wire transfers, and unemployment payments that were issued in the names of other individuals.

4. **AJAYI** would advertise his services to individuals overseas to demonstrate how he could move money in exchange for a fee. **AJAYI** would openly send WhatsApp voice messages to coconspirators discussing how, as translated to English, he was "not a novice" and had "done that several times." **AJAYI** also stated, as translated to English, "I will collect 40% as my share,

it is non-negotiable."

5. **AJAYI** and his co-conspirators would openly discuss how the funds they transferred were the proceeds of "scams." In one such message to **AJAYI**, his coconspirator said, as translated to English, "this job is not easy" and how "people always think because of the way we get and spend money, scamming is very easy. But if it were that easy, everybody would do it." **AJAYI** responded, saying, as translated to English, "I know job is not that easy."

6. In the end, dozens of transactions totaling over $2.6 million in fraud proceeds went through **AJAYI's** bank accounts (or accounts he controlled) to further the money laundering scheme.

**COUNT ONE**
**Money Laundering Conspiracy**
**(18 U.S.C. § 1956(h))**

7. Paragraphs 1–6 are incorporated by reference.

8. Beginning at least as early as in or about September 2018, the exact date being unknown to the Grand Jury, and continuing through at least in or about November 2024, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendant

**RICHARD B. AJAYI**

did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury, to commit the following offenses in violation of Title 18, United States Code, Sections 1956 and 1957:

a. 18 U.S.C. § 1956(a)(1)(A)(i): To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of a specified unlawful activity (that is, wire fraud in violation of 18 U.S.C. § 1343), with the intent to promote the carrying on of the specified unlawful activity (that is, wire fraud, in violation of 18 U.S.C. § 1343), in

violation of 18 U.S.C. § 1956(a)(1)(A)(i).

b. 18 U.S.C. § 1956(a)(1)(B)(i): To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of a specified unlawful activity (that is, wire fraud in violation of 18 U.S.C. § 1343), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity constituting a felony under state or federal law, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

c. 18 U.S.C. § 1957: To knowingly engage and attempt to engage, within the United States, in monetary transactions in criminally derived property of a value greater than $10,000, such funds involving the proceeds of a specified unlawful activity (that is, wire fraud in violation of 18 U.S.C. § 1343), in violation of 18 U.S.C. § 1957.

**A. Objective of the Conspiracy**

9. It was an objective of the conspiracy that the coconspirators would engage in financial transactions with the proceeds of fraud schemes that were designed in such a way to obscure the source of those funds and secure them away from possible tracing or freezes by banks, investigators, or victims.

**B. The Manner and Means of the Conspiracy**

10. To achieve their objective, the conspirators, both known and unknown to the Grand Jury, used the following manner and means (among others):

a. **AJAYI** would often correspond with coconspirators overseas via WhatsApp voice notes, taking directions on when he would receive funds and where to transfer those funds. **AJAYI** would correspond via WhatsApp to discuss the fees he would charge for moving money, the accounts through which the funds would flow, and the documentation to be used when making those transfers.

b. For example, on or about May 25, 2021, **AJAYI's** account (in the name of Riolat International Limited LLC) received a $251,950 wire transfer from a victim of a business email compromise. The very next day, **AJAYI** messaged with a coconspirator concerning where the funds would be passed along. **AJAYI** messaged a photo of the wire transfer receipt which stated that the

$43,000 of these funds were transferred to another account. The wire receipt listed the "purpose of funds" as "logistics and clearing."

c. **AJAYI** would send coconspirators voice notes reiterating that he knew the proceeds he received were the proceeds of scams and frauds perpetrated by his coconspirators. As one example, **AJAYI** noted that, as translated to English, "everybody knows that the money in my hand is the product of scam and they want to receive their share from it."

d. In these communications, **AJAYI** openly advertised the availability of accounts that he controlled. In one such voice message, as translated to English, **AJAYI** stated, "I have USAA, all these are available Navy Federal, Wells Fargo, Discovery, Chicago Municipal Credit Union, PenFed Credit Union, Redstone Credit Union, um, there are plenty of accounts, but it is for wire, wire only."

e. **AJAYI** and his coconspirators also discussed in these messages how funds would be transferred to different countries. In one such message, a coconspirator notes that money would be sent to Ghana, and that money would be converted to Nigerian Naira. On other occasions, **AJAYI** sent funds to accounts in China at the direction of his coconspirators.

f. By transferring money to different accounts and quickly moving funds, **AJAYI** helped to ensure that assets could not be seized or frozen by authorities or victims. In one message discussing the value of his work, **AJAYI** noted to a coconspirator, as translated to English, that "[j]ust as the loader is important, so is the picker. Pickers are like [the] Army who are in the battlefront, if we don't withdraw it, it will be there, whatever transferred there will be there and it will be useless." **AJAYI** also adds, as translated to English, "[w]hen we withdraw millions, we will share it."

All in violation of 18 U.S.C. § 1956(h).

**<u>COUNTS TWO THROUGH TWELVE</u>**
**(Laundering of Monetary Instruments)**
**(18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), & 2)**

11. Paragraphs 1–10 are incorporated by reference.

12. On or about the dates listed in the table below, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendant

**RICHARD B. AJAYI**

did knowingly conduct, cause to be conducted, and attempt to conduct a financial transaction

affecting interstate and foreign commerce, to wit: the financial transactions identified below, knowing that the money involved in or to be involved in the transaction represented proceeds of some form of unlawful activity, and the money involved in or to be involved in was in fact proceeds of a specified unlawful activity (that is, wire fraud in violation of 18 U.S.C. § 1343) (1) with the intent to promote the carrying on of such specified unlawful activity, and (2) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

| Count | Date (On or About) | Financial Transaction |
|---|---|---|
| 2 | October 25, 2021 | The receipt of approximately $800,000 via transfer to a Regions Bank account in the name of Riolat International Limited LLC |
| 3 | Nov. 3, 2021 | The deposit of a check in the amount of $37,000 into a Bank of America account in the name of Riolat International Limited LLC |
| 4 | Nov. 15, 2021 | A wire transaction for $30,000 from a Bank of America account in the name of Riolat International Limited LLC to an account at China Construction Bank |
| 5 | March 1, 2022 | The receipt of approximately $3,990 via wire transfer to a PNC / BBVA account in the name of **AJAYI** |
| 6 | March 2, 2022 | The transfer of $1,000 via Zelle from a PNC/BBVA account to “Afeezabidemiyakubu” |
| 7 | March 7, 2022 | The receipt of approximately $8,230 via wire transfer to a PNC / BBVA account in the name of **AJAYI** |

| | | |
|---|---|---|
| 8 | March 7, 2022 | The transfer of $180 via Zelle from a PNC/BBVA account to "Afeezabidemiyakubu" |
| 9 | August 23, 2023 | The receipt of $5,000 via wire to a MemberSource Credit Union account in the name of **AJAYI** |
| 10 | August 25, 2023 | The receipt of $2,500 via wire to a MemberSource Credit Union account in the name of **AJAYI** |
| 11 | October 30, 2024 | The deposit of a $50,000 check into a TDECU account in the name of Riolat International Limited LLC |
| 12 | Nov. 8, 2024 | The withdrawal of a cashier's check in the amount of $44,850 drawn on a TDECU account in the name of Riolat International LLC |

All in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), & 2.

**COUNT THIRTEEN**
**(Operation of an Unlicensed Money Transmitting Business)**
**(18 U.S.C. § 1960; 18 U.S.C. § 2)**

13. Paragraphs 1–12 are incorporated by reference.

14. Beginning at least as early as in or about September 2018, the exact date being unknown to the Grand Jury, and continuing through at least in or about November 2024, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, defendant

**RICHARD B. AJAYI**

aiding and abetting others known and unknown to the Grand Jury, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, (a) without an appropriate money transmitting license

in a state, that is: Texas, where such operation is punishable as a misdemeanor and a felony under State law, (b) while failing to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, that is: failing to register as a money transmitting business under federal law, and (c) involving the transportation and transmission of funds that were known to **AJAYI** to have been derived from a criminal offense and intended to be used to promote or support unlawful activity (that is, wire fraud, in violation of 18 U.S.C. § 1343).

All in violation of 18 U.S.C. §§ 1960 & 2.

**NOTICE OF FORFEITURE**
**(18 U.S.C. § 982(a)(1))**

Pursuant to 18 U.S.C. § 982(a)(1), the United States gives notice to defendant

**RICHARD B. AJAYI**

that upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 or 1960, any property, real or personal, involved in such offense, and any property traceable to such property, is subject to forfeiture.

**MONEY JUDGMENT AND SUBSTITUTE ASSETS**

The United States gives notice that it will seek a money judgment against the defendant. In the event that one or more conditions listed in 18 U.S.C. § 853(p) exist, the United States will

seek to forfeit any other property of the defendant up to the amount of the money judgment..

**A TRUE BILL**

ORIGINAL SIGNATURE ON FILE

___________________________________
FOREPERSON OF THE GRAND JURY

AARON F. REITZ
United States Attorney
Southern District of Texas

By: Brad R. Gray
BRAD R. GRAY
Assistant United States Attorney
Southern District of Texas